UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Crystal K.,

      Plaintiff,

      v.

Commissioner of Social Security,

      Defendant.

Civil Action No. 2:23–cv–670

## OPINION AND ORDER
(Docs. 9, 10)

Plaintiff Crystal K. brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB).  Pending before the Court are Plaintiff's motion to reverse the Commissioner's decision (Doc. 9), and the Commissioner's motion to affirm the same (Doc. 10).  For the reasons stated below, Plaintiff's motion is granted, the Commissioner's motion is denied, and the matter is remanded for further proceedings and a new decision.

## Background

Plaintiff was thirty-two years old on her alleged disability onset date of October 13, 2021. (AR 152, 179.)  She has a high school education, an associate's degree, and specialized job training as a licensed nurse's aide.  (AR 52, 191.)  In high school, she had an Individualized Education Plan because of difficulty with reading comprehension.  (AR 191.)  Plaintiff has work experience as a licensed nursing assistant/medical assistant.  (AR 207–09.)  During the relevant period, she lived

with her parents, grandmother, and older brother near Rutland, Vermont.  (AR 171–73, 198–99, 647.)

Plaintiff was born with venous malformations[1] in her lower extremities, resulting in many procedures beginning at age eight and ending in approximately 2019.  (AR 280, 646.)  She has been in multiple automobile accidents, starting in around 2004, leaving her with a fracture of the lumbar spine and chronic back pain.  (AR 265, 278, 280–81, 328–29, 344, 612, 646.)  She carries a diagnosis of fibromyalgia, with symptoms primarily consisting of pain all over her body all the time, especially in her hands, neck, back, hip, and knees; and significant body fatigue.  (AR 612, 635.)

Regarding Plaintiff's mental health, the record reveals that she was exposed to severe domestic violence until she was about five years old; her father was incarcerated when she was about five-to-ten years old; she was sexually abused by a family member in her home when she was eight or nine years old (while her father was incarcerated); and she was exposed to repeated episodes of sexual assault as a young adult/adult often in the context of alcohol use.  (*See* AR 266, 278, 280, 291, 325, 330, 646.)  In 2008, when she was nineteen years old, Plaintiff was evaluated for psychological impairments in connection with a disability application for adult disabled child benefits; she was diagnosed with posttraumatic stress disorder (PTSD) and major depression.  (AR 264–67, 271.)  In 2009 and again in 2010, she was hospitalized for depression with suicidal ideation, among other psychiatric conditions.  (AR 277, 324, 333.)  In April 2010, Plaintiff was determined to be disabled beginning January 17, 2007, the date she turned eighteen years old.  (AR

---

[1] "Venous malformation," otherwise known as "venous angioma," is defined as a "vascular anomaly composed of anomalous veins."  *Venous Angioma*, Stedman's Medical Dictionary 40290; *see Venous Malformation*, Stedman's Medical Dictionary 524590 (database updated Nov. 2014, available on Westlaw).  "The symptoms of a [venous malformation] depend on the malformation's size and location and most commonly include: pain[,] swelling[, and] psychological/social issues related to the appearance of the lesion."  Boston Children's Hospital, *Venous Malformation*, https://www.childrenshospital.org/conditions/venous-malformation (last visited Sept. 16, 2024).

76.)  In 2013, on a continuing disability review, it was determined that Plaintiff's disability

continued.  (AR 77.)

In April 2014, Plaintiff began working as a licensed nursing assistant/medical assistant.

(AR 207–08.)  She continued with that work at a level above substantial gainful activity (AR 166,

207–09) until she was fired in 2020 for "not showing up on time" and "not being quick enough"

(AR 53, 54).

In October 2021, Plaintiff filed the pending application for DIB, alleging disability starting

on October 13, 2021 due to clinical depression, attention deficit disorder (ADD), fibromyalgia,

vein malformation, and chronic back pain.  (AR 22, 152, 190.)  In a Function Report, Plaintiff

explained that she has "problems dealing with people, stress, anxiety, paranoia, . . . depression . . .

[, and] trouble sleeping due to PTSD and nightmares."  (AR 171.)  She also stated that she has

"physical pain that makes it difficult to do normal work activities most of the time."  (*Id.*)  Her

mother also submitted a Function Report, reporting that Plaintiff "appears to be very depressed and

in pain most of the time[,]" that "[i]t is difficult to get her to leave the house or interact socially

with others[,]" and that she "has difficulty standing and walking for long periods of time."  (AR

198.)

Plaintiff's disability application was denied initially and upon reconsideration, and Plaintiff

requested an administrative hearing.  On August 25, 2022, Administrative Law Judge (ALJ) Joshua

Menard conducted a telephonic hearing on the application.  (AR 43–66.)  Plaintiff appeared and

testified at the hearing without the assistance of an attorney or other representative.  (AR 47.)  A

vocational expert (VE) also testified at the hearing.  (AR 61–64.)  Plaintiff testified that she suffers

from "real bad . . . clinical depression" where she feels like she has the flu or like she "can't get out

of bed for . . . weeks at a time," and she has no interest in even simple things like eating, going

places, or talking to people.  (AR 55.)  Although Abilify helped with her symptoms "at first," she is

unsure now "[b]ecause [she] still hear[s] a lot of stuff [that is] not there." (*Id.*)  Plaintiff specified that she hears "things" like a phone ringing or "just odd noises" that no one else can hear.  (AR 58.)  When asked what happened in 2020 to prevent her from being able to work anymore, Plaintiff stated that she was no longer "showing up on time" and working "quick enough" (AR 53, 54), and that she would just "lose track of time." (AR 57.)  She further stated that she had trouble sleeping, and a lot of pain, and "[i]t was just . . . too much for me to deal with the stress of it, so, [I was] crying and stuff like that at work." (*Id.*)

On October 18, 2022, the ALJ issued a decision finding that Plaintiff was not disabled under the Social Security Act from her alleged disability onset date of October 13, 2021 through the date of the decision.  (AR 22–33.)  Plaintiff then retained an attorney (AR 12, 146–47), who submitted a request for review to the Appeals Council, and a Medical Source Statement (MSS) from Dr. Steven Smith regarding Plaintiff's ability to perform work-related activities (AR 13–16).  Although Dr. Smith's MSS is dated January 12, 2023, it explicitly relates to the period starting in "October 2021" (AR 16), i.e., the start of Plaintiff's alleged disability period.  The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (AR 1–4.)  In its denial of Plaintiff's request for review, the Appeals Council stated that Dr. Smith's MSS "does not show a reasonable probability that it would change the outcome of the decision[; and thus,] [w]e did not exhibit this evidence." (AR 2.)  Having exhausted her administrative remedies, Plaintiff filed the Complaint in this action on November 29, 2023.  (Doc. 1.)

## **ALJ Decision**

The Commissioner uses a five-step sequential process to evaluate disability claims. *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§

404.1520(b), 416.920(b).  If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  20 C.F.R. §§ 404.1520(d), 416.920(d).  The claimant is presumptively disabled if his or her impairment meets or equals a listed impairment. *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's "residual functional capacity" (RFC), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record.  20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1).  The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her "past relevant work."  20 C.F.R. §§ 404.1520(f), 416.920(f).  Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work."  20 C.F.R. §§ 404.1520(g), 416.920(g).  The claimant bears the burden of proving his or her case at steps one through four. *Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019).  At step five, there is a "limited burden shift" to the Commissioner to "show that there is work in the national economy that the claimant can do; [the Commissioner] need not provide additional evidence of the claimant's [RFC]." *Petrie v. Astrue*, 412 F. App'x 401, 404 (2d Cir. 2011) (internal quotation marks omitted).

Employing this sequential analysis, ALJ Menard first determined that Plaintiff had not engaged in substantial gainful activity since October 13, 2021, her alleged disability onset date. (AR 24.)  At step two, the ALJ found that Plaintiff had the severe impairments of fibromyalgia, chronic back pain, vein malformation, generalized anxiety disorder, major depressive disorder, and ADD.  (*Id.*)  In contrast, the ALJ found that Plaintiff's irritable bowel syndrome was nonsevere.

(AR 25.)  At step three, the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a listed impairment.  (AR 25–27.)

The ALJ next determined that Plaintiff had the RFC to perform "light work," but with the following limitations:

> [Plaintiff] can lift and carry up to twenty pounds occasionally and up to ten pounds frequently; she can stand and/or walk up to six hours in an eight-hour workday and she can sit for six hours in an eight-hour workday with normal breaks; she can push and pull as much as she can lift and carry; and she is able to perform simple, routine tasks.

(AR 27.)  At step four, the ALJ found that Plaintiff was unable to perform her past work as a medical assistant.  (AR 31.)  At the fifth step, however, the ALJ found based on VE testimony that jobs exist in significant numbers in the national economy that Plaintiff can perform, including the representative occupations of cleaner, housekeeping; garment sorter; and laundry worker.  (AR 31–32.)  The ALJ concluded that Plaintiff had not been under a disability from the alleged disability onset date of October 13, 2021 through the date of the decision.  (AR 33.)

### Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is

based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C.

§ 405(g)); *see Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) ("In reviewing a district court's

decision upholding a decision of the Commissioner, [the appellate court] review[s] the

administrative record *de novo* to determine whether there is substantial evidence supporting the

Commissioner's decision and whether the Commissioner applied the correct legal standard."

(internal quotation marks omitted)).  The court's factual review of the Commissioner's decision is

thus limited to determining whether "substantial evidence" in the record supports the decision.

42 U.S.C. § 405(g); *see Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004).  "Substantial

evidence" is "more than a mere scintilla[; i]t means such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir.

2013) (internal quotation marks omitted).

      The substantial evidence standard is "very deferential," and the Commissioner's findings of

fact must be upheld unless "a reasonable factfinder would *have to conclude otherwise*." *Brault v.*

*Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks omitted);

*see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than

one rational interpretation, the Commissioner's conclusion must be upheld.").  It is the

Commissioner who resolves evidentiary conflicts, and the court "should not substitute its judgment

for that of the Commissioner." *Yancey v. Apfel*, 145 F. 3d 106, 111 (2d Cir. 1998).  Nonetheless,

the court should bear in mind that "the Social Security Act is a remedial statute, to be broadly

construed and liberally applied," *Dixon v. Shalala*, 54 F.3d 1019, 1028 (2d Cir. 1995) (internal

quotation marks omitted), and that the court may not defer to the Commissioner's decision

"[w]here an error of law has been made that might have affected the disposition of the case,"

*Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (alteration in original) (internal quotation

marks omitted).  "Even if the Commissioner's decision is supported by substantial evidence, legal

error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

<u>Analysis</u>

Plaintiff argues that her claim should be remanded for the following reasons: (1) the Appeals Council improperly failed to consider the new evidence from Plaintiff's treating provider, Dr. Smith; and (2) the ALJ substituted his own opinion for that of agency consultant Dr. Reilly regarding Plaintiff's ability to stay on task, and failed to develop the record on the issue of the degree of episodic disruption Plaintiff would experience due to her psychiatric symptoms and pain. (*See* Doc. 9.)  The Commissioner responds that there was no reasonable probability the new evidence submitted to the Appeals Council would have changed the ALJ's decision, and substantial evidence supports the ALJ's RFC determination.  (*See* Doc. 10.)

## I.    Appeals Council's Failure to Consider New Evidence

In his January 2023 MSS, Dr. Smith opined that Plaintiff had fibromyalgia[2] and dysthymia,[3] and suffered from fatigue, generalized pain, "tender[ness] everywhere," and severe depression.  (AR 13.)  Moreover, Dr. Smith opined that Plaintiff could never kneel; only occasionally balance; and was limited to only occasional handling, fingering, and reaching.  (AR 14.)  Dr. Smith further stated that Plaintiff could sit, stand, or walk for only one hour at a time without changing position (*id.*), and required hourly breaks (AR 15)  Of particular relevance to this Court's review, Dr. Smith opined that Plaintiff would likely be "off task" doing simple work

---

[2]  "Fibromyalgia" is defined as "[a] common syndrome of chronic widespread soft-tissue pain accompanied by weakness, fatigue, and sleep disturbances; the cause is unknown." *Fibromyalgia*, Stedman's Medical Dictionary 331870 (database updated Nov. 2014, available on Westlaw).

[3]  "Dysthymia" is defined as "[a] chronic mood disorder manifested as depression for most of the day, more days than not, accompanied by some of the following symptoms: poor appetite or overeating, insomnia or hypersomnia, low energy or fatigue, low self-esteem, poor concentration, difficulty making decisions, and feelings of hopelessness." *Dysthymia*, Stedman's Medical Dictionary 274660 (database updated Nov. 2014, available on Westlaw).

for at least twenty percent of the day (*id.*), and would likely miss more than four days of work per month (AR 16) due to her medical conditions or treatment.  Dr. Smith explained the basis for these opinions:

> [Plaintiff] has a history over years of progressive migratory muscle pain without specific reversible causes found, and limited responses to a range of medication.  This is very typical of fibromyalgia, and alternate diagnoses have not been found on multiple visits.  She has severe depression which has amplified these symptoms.  Her response to full doses of appropriate medications has been quite limited.  The limited function reported on this form represents the limits with which she is currently living. I support her application for disability.

(*Id.*)

As noted above, the Appeals Council found that Dr. Smith's MSS "does not show a reasonable probability that it would change the outcome of the decision."  (AR 2.)  In Plaintiff's view, had the ALJ considered Dr. Smith's MSS, there is a reasonable probability that it would have changed the outcome of the ALJ's decision; and that there was good cause for Plaintiff's failure to inform the ALJ about the MSS prior to the date of the ALJ's decision.  The Commissioner disagrees, contending that Dr. Smith's opinion is not well supported or consistent with the record.

### A.    Applicable Law

The Appeals Council must receive new evidence following an ALJ's decision if the evidence is "new, material, and relates to the period on or before the date of the [ALJ's] decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision."  20 C.F.R. § 404.970(a)(5); *see Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996) ("The regulations require the Appeals Council to 'evaluate the entire record including the new and material evidence submitted . . . [and] review the case if it finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" (omission and alterations in original) (quoting 20 C.F.R. § 404.970(b))).  "New" evidence simply means "that evidence which has not been considered previously during the administrative process."  *DelValle v.*

*Apfel*, 97 F. Supp. 2d 215, 222 (D. Conn. 1999).  Evidence is "material" in this context if it is "relevant to the claimant's condition during the time period for which benefits were denied and [it is] probative." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988).

For purposes of judicial review, "new evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record . . . when the Appeals Council denies review of the ALJ's decision." *Perez*, 77 F.3d at 45.  In this circumstance, "[the court] simply review[s] the entire administrative record, which includes the new evidence, and determine[s], as in every case, whether there is substantial evidence to support the decision of the [Commissioner]." *Id.* at 46.  After a denial of review by the Appeals Council, the "final agency decision" is the ALJ decision, not the Appeals Council decision.  *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015).  Therefore, the Appeals Council's reasoning for denying review "has no bearing on the court's review of the Commissioner's decision." *Jessica R. v. Berryhill*, Case No. 5:17-cv-236, 2019 WL 1379875, at *4 (D. Vt. Mar. 27, 2019).  The issue that remains for the court is simply "whether the new evidence altered the weight of the evidence before the ALJ so dramatically as to require remand." *Stacy L. v. Comm'r of Soc. Sec.*, Case No. 2:21-cv-00180, 2022 WL 16549158, at *8 (D. Vt. Oct. 31, 2022) (internal quotation marks omitted).

### B.    Dr. Smith's MSS

Dr. Smith's MSS post-dates the ALJ's decision and therefore is new evidence.  (*See* AR 16.)  The MSS is also material given that it explicitly states that the opined limitations "[have] been present since October 2021" (*id.*), which corresponds to the alleged disability onset date.[4]  The principal issue is whether Dr. Smith's opinions in the MSS alter the weight of the evidence to a degree that requires remand.  As explained below, substantial evidence does not support the

---

[4] Neither party addresses whether Dr. Smith's MSS meets the statutory definitions of "new" and "material." (*See* Docs. 9, 10.)

Appeals Council's conclusion that Dr. Smith's opinions "do[] not show a reasonable probability that [they] would change the outcome of the [ALJ's] decision" (AR 2.)  Therefore, remand is required.

Dr. Smith—who treated Plaintiff during the alleged disability period, from at least November 2021 (*see* AR 629) through March 2022 (*see* AR 650)—opined in his January 2023 MSS that Plaintiff's physical and mental conditions, including fibromyalgia and dysthymia, resulted in the following limitations, among others: (1) Plaintiff could sit, stand, or walk for only one hour at a time without changing position (AR 14); (2) Plaintiff required hourly breaks (AR 15); (3) Plaintiff would likely be "off task" doing simple work for at least twenty percent of the day (*id.*); and (4) Plaintiff would likely miss more than four days of work per month (AR 16).  Not only are these opinions supported by Dr. Smith's own treatment notes as well as other medical providers' treatment notes, they are also consistent with other medical opinions in the record, including at least one medical opinion that the ALJ found persuasive.

Most notably, similar to Dr. Smith's opinion that Plaintiff would be off task for at least twenty percent of the day due to her pain which is amplified by severe depression (*see* AR 15, 16), agency consultant Dr. Thomas Reilly opined after his review of the file in April 2022 that Plaintiff could handle only one- to three-step task demands and would experience "episodic disruption to concentration, attendance[,] and pace" due to her psychological symptoms and pain.  (AR 92.) Dr. Reilly also noted that Plaintiff would experience moderate limitations in her ability to: (1) "maintain attention and concentration for extended periods"; (2) "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances"; and (3) "complete a normal workday and workweek without interruptions from psychologically based symptoms and . . . perform at a consistent pace without an unreasonable number and length of rest periods."  (*Id.*)  The ALJ found Dr. Reilly's opinion that Plaintiff was limited to one- to three-step

11

tasks with episodic disruption in concentration, attendance, and pace to be "persuasive" (AR 29), and agreed with Dr. Reilly that Plaintiff had "moderate limitation" in her ability to concentrate, persist, and maintain pace (AR 26). Yet in his RFC determination, the ALJ did not account for any "episodic disruption" to Plaintiff's concentration, attendance, or pace. (AR 27.) Rather, the ALJ's RFC determination includes no mention of Plaintiff's need to take anything other than "normal breaks" (to relieve her from sitting for too long) and no restriction on Plaintiff's ability to concentrate, persist, or attend work in a consistent manner. (*Id.*)

Other medical opinions and treatment notes, including those of Dr. Smith himself, are also supportive of and consistent with the opinions Dr. Smith rendered in his January 2023 MSS. For example, after meeting with Plaintiff on November 2, 2021, consulting psychologist Dr. Dean Mooney noted that Plaintiff's mood seemed nervous and anxious, she made little eye contact and gave only short answers, she cried during the meeting, and traveling and walking seemed difficult for her. (AR 611, 613.) Dr. Mooney opined that Plaintiff's prognosis was "guarded" and Plaintiff "ha[d] a very difficult time in public and speaking to people." (AR 613.) In treatment notes from the same month, Dr. Smith stated that Plaintiff "has become more depressed," "[is] having more anxiety attacks [from] small triggers," is having "some random variation in her mood," and has a "long history of having a difficult time handling criticism." (AR 629.) About two months later, Dr. Smith saw Plaintiff for worsening right knee pain (patellofemoral syndrome), and noted that there was "no particular explanation" for Plaintiff's pain or why it was worsening. (AR 666.) Dr. Smith noted that Plaintiff also had three headaches in the prior month lasting more than twelve hours, and stated that it was unclear what was causing those headaches. (*Id.*) In a February 9, 2022 treatment note, Dr. Smith stated that Plaintiff was not working, and that she was "[h]elp[ing] with cattle, but [it was] too much physical work for her." (AR 660.) He noted that Plaintiff had been in a "[b]ad pain cycle for [six] months"; that she had bilateral hand pain every day, pain in her

fingers, and neck and left shoulder pain; and that Plaintiff's pain seemed different than her
"[l]ongstanding pain" issues.  (*Id.*)  Observing that Plaintiff's mood was "poor" and that she
"[w]ant[ed] to get into counselling" (*id.*), Dr. Smith diagnosed chronic pain and dysthymic disorder
and set up a psychiatry referral (AR 661).

Dr. Smith's opinions are also consistent with the February 25, 2022 treatment note of
psychiatrist Dr. Alan Frascoia:

- "[Plaintiff's] presentation was remarkable for a woman who appears much older than
  [her] stated age, ambulates with difficulty, demonstrates a tremor in her right upper
  extremity, whose speech is slow and halting, with slurred enunciation, and who[se]
  affect is blunted[-]appearing though reactive with intermittent tearfulness"; Plaintiff
  was cooperative but "struggled to answer questions regarding her history"; Plaintiff
  "identifies depression as being her primary reason for presenting, with low energy and
  motivation as well as daily thoughts of suicide, though without intent or plan."  (AR
  645.)

- Plaintiff is "unable to recall a time when she did not feel depressed.  She has limited
  hope for the future: She would like to move out of her parents['] home and live on her
  own, however feels unable to care for herself, noting that her brother had to tie her
  shoes for her this morning.  She identifies rare panic attack symptoms, especially in the
  context of having to be in new situations (e.g. meeting this [medical provider])."  (*Id.*)

- Plaintiff "ambulates slowly, as though in pain, [she has a] hunched stature"; her speech
  is "slow" and "slurred"; her mood is depressed; her affect is "blunted[,] somewhat
  reactive (tearful)"; her thought process [is] "slowed"; "on interview, [she] struggles to
  give details re[garding her history]";[5] her insight is "limited"; and her judgment is
  "fair."  (AR 647.)

---

[5] As a child, Plaintiff was exposed to domestic violence and was sexually abused by her brother.  (*See* AR
646; *see also* AR 278 (October 2009 treatment note stating that Plaintiff's older brother had sexually molested Plaintiff
when she was between the ages of eight and nine, and that, "alarming[ly]," Plaintiff was still living with her divorced
parents and brother, and apparently had not discussed the sexual abuse with them but had simply "go[ne] about her
daily activities as if nothing happened"); AR 291 (medical provider opining in March 2010 that Plaintiff "has a history
of childhood sexual abuse and trauma" and that "[t]hese harmful childhood experiences have resulted in [PTSD] . . .
(emotional numbing and estrangement from others, avoidance of stimuli or environmental triggers which resemble past
traumatic events, [and] recurrent [and] intrusive recollections of past traumatic events)"); AR 266, 280, 291, 325, 330.)
During the time of the alleged disability period, Plaintiff appears not to have discussed her sexual abuse history with
her treating or consulting providers.  (*See, e.g.*, AR 611, 612 (Dr. Mooney noting in November 2021 that, when asked
about her childhood, Plaintiff "exhibited signs of anxiety" including shaky hands, crying, and moving around in her
chair, but stated, "Uh I don't know; I don't remember a lot of stuff"; and when asked about an abuse history, stated
"kind of, but I don't want to talk about it," explaining, "'I hate talking about myself . . . [;] [t]he more you talk about it
the more you think about it, the worse it gets[;] [i]t's never felt good talking about it'"); *see also* AR 56 (Plaintiff
testifying at August 2022 administrative hearing that she did not find counseling helpful because it "brings up more
issues from my past").)

- Plaintiff was "formerly employed as a medical assistant though [she has] not [been] working for [two] years, with [a] medical history that includes vertebral fracture of the lumbar spine, chronic pain, chronic constipation, [irritable bowel syndrome,] and lower extremity venous malformations[;] and psychiatric history of diagnoses including attention deficit disorder, alcohol dependence, dysthymic disorder, with history of previous suicide attempt and [two] previous hospitalizations.  Plaintiff's Mental State Examination "is remarkable for how impaired she appears relative to the medical and psychiatric [history], with blunted affect and apparent memory deficits.  [It is u]nclear how severe her [alcohol] use has been and whether chronic use has contributed significantly to her current presentation, or whether chronic pain or a lifetime of trauma (both psychosocial and medical) or her dysthymia account for the bulk of it."  (*Id.*)

- "This patient is at chronically elevated risk for harm to self or others due to their race, medical illnesses, established psychiatric diagnosis[,] and history of substance use and previous self-injury as well as chronic [suicidal ideation]."  (*Id.*)

The opinions in Dr. Smith's MSS are further supported by Dr. Frascoia's March 2022 treatment note, where he wrote that Plaintiff "is at chronically elevated risk for harm to self or others due to [her] established psychiatric diagnosis and chronic [suicidal ideation]."  (AR 674.)  Dr. Smith's opinions in the MSS are also supported by Dr. Smith's own April 2022 treatment note, in which he stated that Plaintiff was suffering from ongoing depression, and her right knee had been bothering her for six months and physical therapy had led to more pain.  (AR 686.)  Dr. Smith stated in that treatment note that Plaintiff was "[v]ery frustrat[ed] by how little she can move"; Plaintiff was engaged "but ha[d] a more flat affect than baseline"; Plaintiff's left shoulder "bothers her and is held lower and more anterior than the right"; Plaintiff had "[o]ngoing frustrating chronic pain in the setting of worsened depression"; and Plaintiff was "having more of a fibromyalgia appearance."  (*Id.*)  Similarly, in a May 2022 treatment note, Dr. Frascoia stated that Plaintiff "acknowledges [the] observation that she looks slightly brighter," but "still feels poorly and has intermittent [suicidal ideation] though firmly denies intent."  (AR 700.)  Her energy level was described as "poor" at that time, "though she trie[d] to be active" and had planted corn that week.  (*Id.*)  Dr. Frascoia specified that Plaintiff "was active [for ninety] min[utes and] then took a [four-hour] nap."  (*Id.*)

14

Under the regulations, the "most important factors" to be considered when evaluating the persuasiveness of medical opinions are "supportability" and "consistency."  20 C.F.R. § 404.1520c(a); *see Villier on behalf of N.D.D.R. v. Comm'r of Soc. Sec.*, 23-893-cv, 2024 WL 2174236, at *2 (2d Cir. May 15, 2024) ("In evaluating the persuasiveness of a medical opinion, an ALJ must consider five central factors, the two most important factors being supportability and consistency." (internal quotation marks omitted)).  The ALJ is required to "explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. § 404.1520c(b)(2).  When medical opinions are "both equally well-supported" and "consistent with the record" but not exactly the same, the ALJ is to consider "the other most persuasive factors" in determining how persuasive those opinions are.  *Id.* § 404.1520c(b)(3). Among those "other most persuasive factors" are the medical source's "[r]elationship with the claimant," including whether and how frequently the medical source examined the claimant, the length of the relationship, the specialty of the medical source, and the purpose of the treatment received from the medical source, if any.  *Id.* § 404.1520c(c)(3).  All of these factors favor finding Dr. Smith's opinions persuasive, especially as compared to the medical sources who never treated, examined, or met with Plaintiff before formulating their opinions.  *See, e.g.*, *Lori A. K. v. Comm'r of Soc. Sec.*, Civil No. 3:22-CV-00118-TOF, 2023 WL 2607637, at *9 (D. Conn. Mar. 23, 2023) (noting that although "[i]t is well-settled that a consulting physician's opinion can constitute substantial evidence supporting an ALJ's conclusions[,] . . . [c]ourts in this Circuit long have casted doubt on assigning significant weight to the opinions of consultative examiners when those opinions are based solely on a review of the record." (third alteration in original) (citations and internal quotation marks omitted)); *Shawn H. v. Comm'r of Soc. Sec.*, Civil Action No. 2:19-cv-113, 2020 WL 3969879, at *8 (D. Vt. July 14, 2020) ("Generally, where . . . there are conflicting

opinions between treating and consulting sources, the consulting physician's opinions or report should be given limited weight." (internal quotation marks omitted)).

The Commissioner's contention that Dr. Smith's opinions are "inconsistent with" the record (Doc. 10 at 12) is unpersuasive. First, the Commissioner fails to recognize the treatment notes and opinions discussed above. Second, the Commissioner's list of "inconsistent" evidence largely consists of medical records of findings that are irrelevant to the ALJ's disability decision, including findings of normal lower extremity joints, symmetry of spinal musculature, normal heel-to-toe gait, no incontinence, good eye contact, and normal color (*see, e.g.*, AR 637, 650, 660 (cited in Doc. 10 at 12, first bullet)). At the same time, however, the ALJ fails to recognize significant findings in those same medical records, including tenderness to palpation of the abdomen and spinal processes, pain when walking and standing, tenderness over the lumbar region, bilateral hand pain every day, tenderness over the balls of feet, and poor mood (*see* AR 637, 650, 660). *See Leanne S. v. Comm'r of Soc. Sec.,* No. 3:20-CV-1447 (CFH), 2022 WL 4448245, at *21 (N.D.N.Y. Sept. 23, 2022) (where plaintiff's treatment notes indicated she had isolative behaviors, pain affecting her ability to concentrate, and difficulty sleeping, ALJ should have explained how "plaintiff being awake, alert, or in no acute distress[,] has anything to do with her ability to stay on task for eight hours a day or attend a job for five days a week"). Third, the Commissioner's list of evidence that he claims is inconsistent with Dr. Smith's opinions does not include evidence addressing Dr. Smith's and Dr. Reilly's particular opinions that Plaintiff would experience disruptions in her workday, even though those opinions are the focus of Plaintiff's motion seeking reversal of the ALJ's decision. The most relevant parts of Dr. Smith's opinions, for purposes of this Court's review of Plaintiff's claim, are Dr. Smith's findings that (1) Plaintiff would require hourly breaks throughout the workday, (2) Plaintiff would likely be off-task for twenty percent or more of the workday, and (3) Plaintiff would likely miss more than four days of work per month.

(AR 15–16.)  But the Commissioner fails to address Plaintiff's argument that these particular findings of Dr. Smith are consistent with and supported by other evidence in the record and therefore should have been considered in the ALJ's decision.

Among the evidence the Commissioner contends is inconsistent with Dr. Smith's opinions is Plaintiff's statement in her Function Report that "her hobbies included gardening and painting." (Doc. 10 at 13 (citing AR 173, 175).)  But Plaintiff explicitly stated multiple times in her Function Report, and also at the administrative hearing, that she is able to do things like gardening and painting only occasionally and for short periods of time, and more importantly, only when she is not depressed or stressed, "depend[ing] on the day and how [she] feel[s]."  (AR 173.)  She explained that "most of the time [she doesn't] feel like doing anything" (AR 175), and "a lot of times" feels . . . "too depressed to do stuff" (AR 59).  When asked at the administrative hearing what she did for "hobbies or activities," Plaintiff did not list gardening or painting, instead stating that on a typical day, she gets up and has coffee, feeds her cats and dog, eats, takes a nap, and may go to the store or outside for a walk.  (*Id.*)  The Court does not find persuasive the Commissioner's claim that Plaintiff's daily activities/hobbies are inconsistent with Dr. Smith's opinions that Plaintiff would be off-task for twenty percent or more of the workday and would be absent from work for more than four days each month.  *See, e.g.*, *Patrick M. v. Saul*, 3:18-CV-290 (ATB), 2019 WL 4071780, at *10 (N.D.N.Y. Aug. 28, 2019) ("Plaintiff's ability to . . . engage in . . . daily activities of limited duration do not correlate to the Plaintiff's ability to stay on-task during an eight-hour work day or the likelihood that he would miss work several days per month because of exacerbations of his chronic back or neck pain."); *Sonia V. v. Comm'r of Soc. Sec.*, 5:18-CV-22 (ATB), 2019 WL 428829, at *7 (N.D.N.Y. Feb. 4, 2019) (finding that daily activities such as making simple meals, performing chores with the help of others, and attending religious services several times a week, "provide a very weak basis for discounting treating source opinions, because

none were performed at a rate of eight hours a day, five days a week" (internal quotation marks omitted)).  Plaintiff's description of a typical day, including her very limited and infrequent hobbies and activities, is consistent with Dr. Smith's opinions.

Similarly without merit is the Commissioner's claim that a July 2022 treatment note from Dr. Frascoia indicating that Plaintiff was feeling better since taking Abilify (*see* Doc. 10 at 12 (citing AR 693, 700)) is inconsistent with Dr. Smith's opinions.  This treatment note, and others from around the same time period, states that Plaintiff's "[p]ain control is still frustrated" (AR 695); and that "[p]ain is still an issue – she sits/stands with difficulty," she "[a]ppears older than [her] stated age," and she has "constricted posture" (AR 693).  Another treatment note from around this period states that although Plaintiff looked slightly brighter, she was still having intermittent suicidal ideation and her energy level was poor.  (AR 700.)  The note further states that although Plaintiff was able to plant corn, she was active for only ninety minutes and then she took a four-hour nap.  (*Id.*)  One treatment note stating that Plaintiff was feeling better after starting on a new medication does not itself demonstrate that Plaintiff could consistently work full time, especially considering that Dr. Smith opined approximately six months after the treatment note was prepared that Plaintiff would be off-task for twenty percent or more of the workday and would be absent from work for more than four days each month.  These later opinions of Dr. Smith reveal his opinion that Abilify did not ultimately cure Plaintiff of her ailments to a point where she could dependably and consistently work.  Furthermore, Plaintiff herself testified at the administrative hearing that although Abilify helped with her symptoms "at first," she is unsure now, "[b]ecause I still hear a lot of stuff [that is] not there."  (AR 55.)

Finally, the Commissioner claims that Dr. Smith's opinions are unsupported because he "did not cite any treatment records nor any objective medical evidence."[6] (Doc. 10 at 12.)  This argument is not persuasive.  First, the MSS does in fact identify "clinical findings, objective signs, laboratory results, radiological studies, etc." that support Dr. Smith's opinions, including: "[t]ender everywhere"; "ESR, Lyme, Alc, LFTs"; and "severe depression PHQ9 = 25–27."  (AR 13.)  Had the Commissioner required explanation for any of these supporting findings/evidence, the record could have been developed further. But the Court is aware of no attempt on behalf of the Commissioner to make inquiries of Dr. Smith.  Second, even if Dr. Smith had not listed any clinical findings or other objective medical evidence to support his opinions in the MSS, the Commissioner may not reject a treating source's opinions in a medical source statement on the sole grounds that the statement does not include citation to specific supporting evidence, including treatment notes or objective test results.  "[T]he lack of specific clinical findings in [a] treating physician's report d[oes] not, standing by itself, justify the ALJ's failure to credit the physician's opinion."  *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998); *see id.* ("[The] failure [of claimant's treating physician] to include [a medical explanation in support of] the findings in his [medical] report does not mean that such support does not exist; he might not have provided this information in the report because he did not know that the ALJ would consider it critical to the disposition of the case."); *see Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999) ("It is entirely possible that [claimant's treating physician], [i]f asked, could have provided a sufficient explanation for any seeming lack of support for his ultimate diagnosis of complete disability." (second alteration in original) (internal quotation marks omitted)).

---

[6] Although not explicitly stated, presumably the Commissioner's argument is that Dr. Smith should have cited "treatment records" or "objective medical evidence" *in his MSS*.  The Court disagrees with the Commissioner on this point, as discussed *infra*.  If, on the other hand, the argument is that there are no supporting treatment records or objective medical evidence in the record generally, the argument is without merit given the record evidence discussed above.

None of the relevant limitations contained in Dr. Smith's MSS—including that Plaintiff could sit, stand, or walk for only one hour at a time without changing position; that Plaintiff required hourly breaks; that Plaintiff would likely be "off task" doing simple work for at least twenty percent of the day; and that Plaintiff would likely miss more than four days of work per month—are included in the ALJ's RFC determination.  (*See* AR 27.)  If even one of these limitations was included, it would likely have changed the disability decision.  *See Michael B. v. Saul*, No. 3:19-CV-776 (CFH), 2020 WL 5292055, at *10 (N.D.N.Y. Sept. 4, 2020) (remanding where "[t]he Appeals Council was presented with a treating physician opinion that would undermine the RFC in significant ways if it were [to] be accepted").  In particular, had the ALJ included in his RFC determination either the limitation that Plaintiff would be off task for at least twenty percent of the workday or absent more than four days each month, the disability decision would have been different because the VE testified that an individual who is "off task for [fifteen percent] or more of the workday, for whatever reason," or "absent [from work] for whatever reason . . . up to twice a month or more," would be precluded from working.  (AR 63.)

Remand is required because there is a reasonable probability that Dr. Smith's MSS would have changed the outcome of the ALJ's decision.  *See, e.g.*, *L.M. v. Kijakazi*, Case No. 2:21-cv-2, 2022 WL 16822134, at *8 (D. Vt. Aug. 29, 2022) (holding that where Appeals Council "failed to give [new evidence] adequate consideration" and there was a "reasonable probability" ALJ would have reached a different conclusion had he considered that evidence, claimant was "entitled to remand for a complete review of the record"); *Leah H. v. Comm'r of Soc. Sec.*, 3:20-CV-455 (CFH), 2021 WL 4033129, at *10 (N.D.N.Y. Sept. 3, 2021) (remanding where "new evidence presented to the Appeals Council in the form of [a treating physician's] opinion is potentially material, and must be reviewed on remand" (internal quotation marks omitted)); *Davis v. Saul*, 19 Civ. 02974 (JCM), 2020 WL 2094096, at *13 (S.D.N.Y. May 1, 2020) (holding that "new

evidence is at the very least potentially material, and [thus] must be reviewed by the ALJ on

remand" (internal quotation marks omitted) (collecting cases)).

### C.    Good Cause for Late Submission of Dr. Smith's MSS

Plaintiff argues that there was "good cause" for her failure to inform the ALJ about, or

submit to the ALJ, Dr. Smith's MSS prior to the ALJ rendering his decision.  Plaintiff claims that

she was unrepresented at the administrative hearing, and that she has an educational limitation that

prevented her from understanding the importance of submitting medical opinions to corroborate

her disability.  (Doc. 9 at 6–8.)  The Commissioner does not respond to this argument.

Under 20 C.F.R. § 404.970(b), the Appeals Council will consider new and material

evidence only if the claimant shows "good cause" for not informing the Commissioner about or

submitting to the Commissioner the new evidence before the ALJ issued his or her decision.  Good

cause may be shown if the claimant "had a[n] educational . . . limitation[] that prevented [him or

her] from informing [the Commissioner] about or submitting the evidence earlier."  *Id.* §

404.1470(b)(2).  In this case, the Appeals Council did not consider or determine whether Plaintiff

had good cause for not submitting Dr. Smith's MSS before the ALJ issued his decision.  Rather,

the Appeals Council found that this new evidence "does not show a reasonable probability that it

would change the outcome of the decision," and for that reason the Appeals Council "did not

exhibit th[e] evidence."  (AR 2.)

District courts in this Circuit have declined to address the "good cause" requirement where

the Appeals Council did not assert it as a reason for declining to review new evidence.  *See Bridget*

*P. v. Comm'r of Soc. Sec.*, No. 3:21-CV-654 (CFH), 2023 WL 2402782, at *9 (N.D.N.Y. Mar. 8,

2023) (collecting cases).  Although the Second Circuit "has not explicitly answered this question,"

it has "refused to analyze the Commissioner's argument that the new evidence did not pertain to

the relevant time period as that was not a reason that the Appeals Council provided in declining to

review the ALJ's decision." *Id.* (citing *Newbury v. Astrue*, 321 F. App'x 16, 18 (2d Cir. 2009)).

The court explained: "[a] reviewing court may not accept appellate counsel's post hoc

rationalizations for agency action." *Newbury*, 321 F. App'x at 18 (internal quotation marks

omitted). This decision of the Second Circuit, as well as the district court decisions declining to

address a "good cause" argument where the Appeals Council did not assert it, are "supported by

the well understood principle[] that 'reviewing courts remain bound by traditional administrative

law principles, including the rule that judges generally must assess the lawfulness of an agency's

action in light of the explanations the agency offered for it rather than any *ex post* rationales a court

can devise.'" *Bridget P.*, 2023 WL 2402782 at *10 (quoting *Garland v. Ming Dai*, 593 U.S. 357,

369 (2021)).

Based on the foregoing, and considering that the Commissioner has not argued that Plaintiff

lacked good cause in her submission of Dr. Smith's MSS after the ALJ's decision, the Court

declines to address Plaintiff's "good cause" argument.

## II.      Failure to Develop the Record

Although this case will be remanded for consideration of Dr. Smith's MSS, the Court

addresses Plaintiff's argument that the ALJ failed to develop the record regarding the degree of

episodic disruption Plaintiff would experience due to psychiatric symptoms and pain.[7] (*See* Doc. 9

at 8–9.) According to Plaintiff, although the ALJ relies on Dr. Reilly's opinion, finding it

persuasive, the ALJ "treats the portion of Dr. Reilly's opinion related to [episodic] disruption to

work . . . as if it does not exist." (*Id.* at 8.) Plaintiff argues that Dr. Reilly's failure to "quantify the

degree of disruption Plaintiff would face due to her symptoms" constitutes "a deficiency in the

---

[7] Plaintiff also claims the ALJ substituted his own opinion for Dr. Reilly's regarding Plaintiff's ability to stay on task. (*See* Doc. 9 at 8.) The Court finds no merit to this argument because the ALJ offered no opinion at all regarding Plaintiff's ability to stay on task in his decision.

medical evidence that the ALJ ha[d] a duty to develop." (*Id.*)  Plaintiff therefore contends that the claim should be remanded for the ALJ to develop the record and make a finding about how frequently Plaintiff's work would be disrupted by her symptoms.

Because disability benefits proceedings are non-adversarial in nature, the ALJ has an affirmative obligation to develop a complete administrative record, even when the claimant is represented by counsel.  *See Lamay v. Astrue*, 562 F.3d 503, 508–09 (2d Cir. 2009); *Echevarria v. Sec'y of Health & Hum. Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) (noting that "the ALJ, unlike a judge in a trial, must . . . affirmatively develop the record").  When the claimant proceeds pro se, "the ALJ has a duty . . . to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."  *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980) (omission in original) (internal quotation marks omitted).  Moreover, "courts have held that where . . . psychiatric impairments are at issue, an ALJ has a heightened duty to develop the record due to the difficulties associated with evaluating a mental illness's impact on a claimant's ability to function adequately in a workplace."  *Rodriguez v. Comm'r of Soc. Sec.*, No. 20-CV-3687 (VSB) (RWL), 2021 WL 4200872, at *21 (S.D.N.Y. Aug. 19, 2021), *report and recommendation adopted*, 20-CV-3687 (VSB), 2022 WL 874931 (Mar. 24, 2022).  "Ultimately, [t]he record as a whole must be complete and detailed enough to allow the ALJ to determine the claimant's [RFC]."  *Rosario v. Comm'r of Soc. Sec.*, CIVIL ACTION NO. 20 Civ. 7749 (SLC), 2022 WL 819810, at *6 (S.D.N.Y. Mar. 18, 2022) (first alteration in original) (internal quotation marks omitted).  "When there are inconsistencies, gaps, or ambiguities in the record, the regulations give the ALJ options to collect evidence to resolve these issues, including re-contacting the treating physician, requesting additional records, arranging for a consultative examination, or seeking information from others."  *Id.* (citing 20 C.F.R. § 416.920b).  Where there are no "obvious gaps" in the administrative record, and where the ALJ already possesses a complete medical history, "the ALJ is under no obligation

to seek additional information in advance of rejecting a benefits claim." *Guillen v. Berryhill*, 697 F. App'x 107, 108 (2d Cir. 2017) (quoting *Rosa*, 168 F.3d at 79 n.5). "An ALJ's failure to develop the record warrants remand." *Id.*

In considering Plaintiff's duty-to-develop argument, the Court must review the entire administrative record, including the new evidence submitted to the Appeals Council after the ALJ's decision, i.e., Dr. Smith's MSS. "When the Appeals Council denies review after considering new evidence, [the court] simply review[s] the entire administrative record, which includes the new evidence, and determine[s], as in every case, whether there is substantial evidence to support the decision of the Secretary." *Perez*, 77 F.3d at 46; *see Lesterhuis*, 805 F.3d at 87. Plaintiff has not included Dr. Smith's MSS in her duty-to-develop argument. The duty-to-develop analysis differs depending on whether Dr. Smith's MSS is part of the record under review: Plaintiff's argument is weaker if Dr. Smith's MSS is part of the record because opinions contained in the MSS fill the evidence gap regarding the degree of episodic disruption that Plaintiff would experience at work. Specifically, Plaintiff's contention that the ALJ should have sought "additional medical opinions" discussing "how frequently [Plaintiff's] days were disrupted by her psychological symptoms and pain," is less persuasive when Dr. Smith's MSS—which opines that Plaintiff would likely be off task for at least twenty percent of the workday and would miss more than four days of work per month (AR 15, 16)—is considered a part of the record. Plaintiff does not argue that once Dr. Smith's MSS is added to the record, there are still evidentiary gaps for the ALJ to develop.

Accordingly, the Court does not consider Plaintiff's duty-to-develop argument. *See, e.g.*, *Lugo v. Berryhill*, 18-cv-2179 (JGK) (RWL), 2019 WL 4418649, at *16 n.15 (S.D.N.Y. May 8, 2019), *report and recommendation adopted*, 18-cv-2179 (JGK), 390 F. Supp. 3d 453 (July 27, 2019) (finding claimant's argument that ALJ failed to develop record "moot," where court

recommended remand for Commissioner to consider new evidence); *see also Michael B.*, 2020 WL 5292055, at *11 (declining to address remaining arguments where court determined "remand is warranted for proper consideration of the additional evidence submitted by [claimant's treating physician]"); *Wagner v. Comm'r of Soc. Sec.*, 435 F. Supp. 3d 509, 517 (W.D.N.Y. 2020) (declining to rule on plaintiff's additional arguments where court remanded for further consideration of treating physician's opinion (collecting cases)).  On remand, the ALJ shall consider Dr. Smith's opinions and re-weigh the medical and other evidence accordingly.  If the ALJ finds that evidentiary gaps in the administrative record remain, he must further develop the record.

## **Conclusion**

For these reasons, the Court GRANTS Plaintiff's motion (Doc. 9), DENIES the Commissioner's motion (Doc. 10), and REMANDS for further proceedings and a new decision in accordance with this Opinion and Order.

Dated at Burlington, in the District of Vermont, this 11th day of October 2024.


*/s/ Kevin J. Doyle*
United States Magistrate Judge